James A. ELKINS, Sr.; Mary Jo Elkins; James A. Elkins, II, Plaintiffs,

James Elkins, Jr., Plaintiff-Appellant,

v.

RICHARDSON–MERRELL, INC., Defendant–Appellee.

No. 92–6172.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 3, 1993.

Decided Oct. 20, 1993.

Kenneth J. Chesebro, Cambridge, MA (argued and briefed), Barry J. Nace, Paulson, Nace, Norwind & Sellinger, Washington, DC, George E. Copple, Jr., Nashville, TN, for James Elkins, Jr., plaintiff-appellant.

Frank W. Woodside, III (argued and briefed), Stephen M. Rosenberger, Dinsmore & Shohl, Cincinnati, OH, R. Franklin Norton, Norton & Luhn, Knoxville, TN, Frederick M. Erney, Cincinnati, OH, for defendant-appellee.

Before: GUY and NELSON, Circuit Judges; and WELLFORD, Senior Circuit Judge.

WELLFORD, Senior Circuit Judge.

Once again this court considers a product liability action alleging that Bendectin, a drug manufactured by Richardson–Merrell, Inc., (RMI), caused a severe birth defect. The district court granted summary judgment in RMI's favor based on the similarity between this case and two recent Bendectin cases in this circuit, both of which ended in summary judgment for the defendant. *Lee v. Richardson–Merrell, Inc.,* 772 F.Supp. 1027 (W.D.Tenn.1991), *aff'd, mem.,* 961 F.2d 1577 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 197, 121 L.Ed.2d 139 (1992); *Turpin v. Merrell Dow Pharmaceuticals, Inc.,* 736 F.Supp. 737 (E.D.Ky.1990), *aff'd,* 959 F.2d 1349 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 84, 121 L.Ed.2d 47 (1992). The plaintiff now appeals the entry of summary judgment against him.

I.

Bendectin has been approved by the FDA for the purpose of combatting morning sickness since 1956. Faced with costly litigation involving the use of Bendectin, however, Merrell–Dow voluntarily withdrew the drug from the market in 1983. Notwithstanding Bendectin's withdrawal from the marketplace, the FDA has maintained its support of Bendectin as a safe and effective drug for the purpose of relieving nausea and vomiting associated with pregnancy. Moreover, comparison studies have failed to detect any significant reduction in the incidence of birth de-

fects since Bendectin became unavailable in 1983.

The proof in this case is identical to the proof offered in the two other recent Bendectin cases in this circuit—*Turpin* and *Lee*.[1] In all three cases, as in myriad Bendectin cases in other circuits, the plaintiffs rely on *in vitro* (in the test tube) studies, *in vivo* (animal) studies, and reanalyses of human epidemiological studies. The defendants, on the other hand, rely on more than 30 human epidemiological studies, all of which concluded that there was no identifiable link between Bendectin and birth defects.[2] Relying almost exclusively on *Turpin*, the magistrate recommended that summary judgment be issued in Merrell's favor. The district court found "no material differences" between *Elkins* and *Lee*, and, relying also on *Turpin*, accepted the magistrate's recommendation.

The plaintiff argues on appeal that under the United States Supreme Court's recent decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 506 U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the scientific opinions offered by the defendant's expert witness were inadmissible; that the defendant therefore failed to show the absence of a genuine issue of material fact; that under Tennessee law, which must be applied here pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), it was error for the district court to take a "hard look" at the basis for the scientific theories and inferences embodied in the plaintiffs' affidavits, and that the district court violated the Seventh Amendment by failing to preserve the plaintiffs' right to trial by jury.

## II.

In *Turpin v. Merrell–Dow, Inc.*, 959 F.2d 1349 (6th Cir.), *cert. denied*, 506 U.S. ——, 113 S.Ct. 84, 121 L.Ed.2d 47 (1992), we dealt at length with the difficult issues attending the nature of proof presented by plaintiffs in Bendectin actions like this one. In an opinion authored by Chief Judge Merritt, this court affirmed the district court's grant of summary judgment, based on the weakness of the causal link between Bendectin and birth defects. We held that:

> Based on the record before us, . . . whether Bendectin caused the minor plaintiff's birth defects is not known and is not capable of being proved to the requisite degree of legal probability based on the scientific evidence currently available. Taken in the light most favorable to the plaintiffs, the scientific evidence that provides the foundation for the expert opinion on causation in this case is not sufficient to allow a jury to find that it is more probable than not that Bendectin caused the minor plaintiff's injury.

*Turpin*, 959 F.2d at 1350.[3]

In *Turpin*, we found additional authority supporting the view of the court: *Wilson v.*

---

1. In their unsuccessful motion for consolidation, the plaintiffs asserted that:

    [d]iscovery of all the defendant's witnesses has been essentially completed except for a few experts. In the *Lee* case and it is anticipated that the same witnesses will be utilized in the *Elkins* case. [sic.] On the other hand, all of the plaintiffs' witnesses in the *Elkins* and *Lee* cases will be the same except for some brief individual witnesses on damages and the parents.

    *Elkins v. Richardson–Merrell, Inc.*, No. 3:91–0167, slip. op. at 4, 1992 WL 544962. In *Lee v. Richardson–Merrell, Inc.*, 961 F.2d 1577, 1577 (6th Cir.1992), this court noted that "the evidence presented by the Lees in the instant case is identical in all material respects to the evidence relied upon by the plaintiffs in [*Turpin v. Merrell Dow Pharmaceuticals, Inc.*, 959 F.2d 1349 (6th Cir.) *cert. denied*, —— U.S. ——, 113 S.Ct. 84, 121 L.Ed.2d 47 (1992)]." Thus, the evidence pre-

   sented in *Elkins, Lee*, and *Turpin* is indistinguishable in any material respect.

2. For purposes of this case, a technical analysis of the plaintiff's proof is unnecessary. Judge Merritt engaged in a thorough analysis of the studies exploring the possible connection between Bendectin and birth defects in *Turpin*, 959 F.2d at 1353–60. A detailed analysis of the methodology behind the studies appeared in a recent Third Circuit case, *DeLuca v. Merrell Dow Pharmaceuticals, Inc.*, 911 F.2d 941, 945–49 (3d Cir.1990).

3. In *Turpin* and in *Lee*, seven different judges sitting on this court have adhered substantially to this view expressed by Chief Judge Merritt. The panel in this case consists of three additional Sixth Circuit judges. We do not count in this number the three different additional judges on this court who considered and affirmed the class action jury verdict for the defendant on the issue

*Merrell Dow Pharmaceuticals,* 893 F.2d 1149, 1154 (10th Cir.1990) (finding "particularly significant" the "absence of epidemiological evidence showing a causal relationship between Bendectin and birth defects"); *Brock v. Merrell Dow Pharmaceuticals,* 874 F.2d 307, 315 (5th Cir.1989), *cert. denied,* 494 U.S. 1046, 110 S.Ct. 1511, 108 L.Ed.2d 646 (1990) (verdict for plaintiff set aside by j.n.o.v.—"we are convinced that the Brocks did not present sufficient evidence regarding causation to allow a trier of fact to make a reasonable inference that Bendectin caused Rachel Brock's limb reduction defect"). We also considered *Daubert v. Merrell Dow Pharmaceuticals,* 951 F.2d 1128 (9th Cir. 1981), and *DeLuca v. Merrell Dow Pharmaceuticals,* 911 F.2d 941 (3d Cir.1990), in *Turpin.*

We construe *Turpin* to treat the plaintiff's expert opinion indicating a basis of support for the plaintiffs' theories in animal studies to be admissible but "simply inadequate ... [to] permit a jury to conclude that Bendectin more probably than not causes limb defects." *Id.* at 1360. This court found the evidence to be admissible, we believe, but that it presented too wide an "analytical gap" for reasonable inferences on causation "to be drawn on the ultimate issue of human birth defects." *Turpin,* 959 F.2d at 1360. As we have already indicated, the evidence offered by Elkins does not differ in any material respect from evidence presented in both *Turpin* and *Lee.* We agree with the district court that this case is factually indistinguishable from *Turpin* and *Lee.* Thus, unless the plaintiffs have demonstrated some reason, aside from any factual argument, why those cases should not apply here, *Turpin* and *Lee* control this case, and mandate summary judgment in Merrell's favor.

### A.

The plaintiff argues that, considering the Supreme Court's recent decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 506 U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the defendants failed to meet their

of causation of human birth defects by ingestion of Bendectin. *In re Bendectin Litigation,* 857 F.2d 290 (6th Cir.1988), *cert. denied sub. nom.*

burden, under Rule 56(c), of showing, "that there is no genuine issue as to any material fact and that [Merrell] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under *Daubert,* the plaintiffs contend, the only affidavit used to support the defendant's motion for summary judgment has not been shown admissible. Thus, the plaintiffs argue that summary judgment must be reversed, or in the alternative, that remand is necessary, so the district court may determine, consistent with *Daubert,* whether the defendant's affidavit is admissible.

██ The plaintiff has misinterpreted the defendant's burden regarding summary judgment. Because Merrell does not bear the ultimate burden of persuasion on the causation issue, Merrell need only point out the lack of a genuine issue regarding causation. *See, Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986) ("[w]hen the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial.") Moreover, Merrell had no obligation to support its motion for summary judgment with *any* affidavits. Rule 56 provides that a defending party may "move *with or without supporting affidavits* for summary judgment in the party's favor." Fed.R.Civ.P. 56(b) (emphasis added). As the Supreme Court has explained,

> regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c) is satisfied.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

██ Merrell pointed out the absence of a genuine factual issue on the material element of causation. The district court agreed that the plaintiffs had failed to establish a genuine factual dispute regarding causation. In do-

*Hoffman v. Merrell Dow Pharmaceuticals, Inc.,* 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989).

ing so, the court relied on *Turpin*, where this court determined that, even

> "[t]aken in the light most favorable to the plaintiffs, the scientific evidence that provides the foundation for the expert opinion on causation in this case is not sufficient to allow a jury to find that it is more probable than not that Bendectin caused the minor plaintiff's injury."

*Turpin*, 959 F.2d at 1350. The reason for summary judgment was not the strength of the defendant's proof, but the insufficiency of the plaintiffs' proof. Thus, the admissibility of Merrell's affidavit under *Daubert* is irrelevant; the district court properly determined that the *plaintiffs* failed to demonstrate the existence of a genuine factual dispute regarding causation. The plaintiffs bear the burden of establishing causation. As a result, *Daubert* does not invalidate the district court's summary judgment analysis in this case.

### B.

Even though the plaintiff concedes that he relies on "evidence similar to that found in *Turpin* and *Lee*," he argues that Tennessee law, not federal law, is controlling under *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and specifically, that this court adopts state law when ruling on summary judgment motions in diversity cases, citing *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1163 (6th Cir.1990), and *Bank of Cumberland v. Aetna Casualty Co.*, 956 F.2d 595, 597 (6th Cir.), *cert. denied, —— U.S. ——*, 113 S.Ct. 204, 121 L.Ed.2d 146 (1992), among others.[4] They contend that *Turpin*'s instruction to take a "hard look" at the basis for scientific opinions is at odds with Tennessee law regarding summary judgment. *See Turpin*, 959 F.2d at 1352. Consequently, they argue, the district court violated the *Erie* doctrine by relying on *Turpin*.

■ The defendant responds that the plaintiff has failed to raise this issue prior to appeal. In Elkins' objections to the magistrate judge's recommendation that summary judgment be granted to the defendant, the plaintiff mentioned: (1) "the Seventh Amendment;" (2) "all of the Rules of Evidence;" (3) a petition for certiorari pending in *Turpin;* (4) confusion of the "issue of res judicata and collateral estoppel with stare decisis;" (5) "lack of wisdom of the Opinion in *Turpin;* " (6) "all of the science that is involved [should be considered] in order to reach a conclusion;" (7) defendant's drug is a teratogen, and ... caused the defect in this case;" (8) methodology of the parties' experts is the same; and (9) "only the conclusions of the experts differ." Conspicuous by its absence from this list was any mention of state law evidential requirements as to the summary judgment, or any mention of *Erie Railroad* requirements. Moreover, the district judge mentioned nothing in his memorandum opinion overruling the plaintiff's objections about applying state law or *Erie Railroad*. The plaintiffs sought no reconsideration or clarification of this decision based upon the district court's overlooking any argument such as is now advanced. This court does not normally address issues raised for the first time on appeal. *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 243–45 (6th Cir.1991); *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir.1990). While this rule is discretionary, the court has adhered to the rule except in " 'exceptional cases or particular circumstances' or when the rule would produce 'a plain miscarriage of justice.' " *Pinney Dock and Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir.) *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (quoting *Hormel v. Helvering*, 312 U.S. 552, 557–58, 61 S.Ct. 719, 722, 85 L.Ed. 1037 (1941)). This case does not present the kind of exceptional circumstances that warrant disregarding the general rule. Because the plaintiffs did not adequately raise the *Erie Railroad* argument before the district court, we decline to consider that issue for the first time on appellate review.

### C.

■ The plaintiff's final argument is that *Turpin* requires a court to weigh the credi-

---

4. While we are merely reciting the plaintiffs' argument here, we note that the cases relied upon by the plaintiffs in their brief as to the sufficiency of the evidence deal with directed verdicts and judgments notwithstanding the verdict, not summary judgment.

bility of the evidence when ruling on a summary judgment motion, and that this practice violates the Seventh Amendment right to a jury trial. We disagree.

Noting the "difficulty ... in knowing what reasonable inferences of causation to draw from animal experiments and epidemiological studies" and the "uncertainty of judges about how far they should enter the scientific thicket of conflicting inferences in order to determine whether the basis of a scientific opinion concerning causation is significantly plausible to allow a jury to ground a verdict on it," Judge Merritt's opinion in *Turpin* instructed district judges to take a "hard look" at the basis of scientific opinions. *Turpin*, 959 F.2d at 1352. The court held that "close judicial analysis of ... technical and specialized matter" is necessary not only to control juror misunderstanding, but also to curtail "the potential for exaggeration and fraud on the court, [which is often] impossible to discover without close inspection and careful consideration of the record." *Id.* at 1352–53.

The direction to take a "hard look" at the basis of a scientific opinion does not require weighing credibility any more than the Supreme Court's direction to consider the record as a whole and decide whether any rational juror could decide the disputed factual issue in the plaintiff's favor. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1480 (6th Cir.1989) (same). Moreover, the Supreme Court recently cited *Turpin* with approval as a preferred method of dealing with weak scientific proof in Bendectin cases. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* —— U.S. ——, ——, 113 S.Ct. 2786, 2798, 125 L.Ed.2d 469 (1993). Significantly, the Court in *Daubert* indicated that even if expert opinion or evidence on one side were relevant and admissible, if "insufficient to allow a reasonable juror to conclude that the position more likely than not is true," it may be the basis for a directed verdict or a grant of summary judgment. *Id.* at ——, 113 S.Ct. at 2798.

Following this last observation, the Court added:

> Cf., e.g., *Turpin v. Merrell Dow Pharmaceuticals, Inc.,* 959 F.2d 1349 (CA6) ("holding that scientific evidence that provided foundation for expert testimony, viewed in the light most favorable to plaintiffs, was not sufficient to allow a jury to find it more probable than not that defendant caused plaintiff's injury), *cert. denied,* 506 U.S. [——, 113 S.Ct. 84, 121 L.Ed.2d 47] (1992); *Brock v. Merrell Dow Pharmaceuticals, Inc.,* 874 F.2d 307 (CA5 1989) (reversing judgment entered on jury verdict for plaintiffs because evidence regarding causation was insufficient), *modified,* 884 F.2d 166 (CA5 1989), *cert. denied,* 494 U.S. 1046 [110 S.Ct. 1511, 108 L.Ed.2d 646] (1990)...."

*Id.* at ——, 113 S.Ct. at 2798. Thus, we do not believe that the prophylactic measure adopted in *Turpin* violates the Seventh Amendment.

### III.

As we have repeatedly indicated, we agree with the district court that this case is indistinguishable from *Turpin* and *Lee,* both factually, and regarding the scientific evidence presented. We deem that *Daubert* does not require a remand for the reasons herein pointed out. Because the plaintiffs did not adequately raise the *Erie Railroad* argument before the district court, we decline to consider that issue for the first time on appeal. Finally, we do not believe that the *Turpin* hard look analysis violates the Seventh Amendment. Consequently, the plaintiff has failed to demonstrate any reason why reliance on *Turpin* and *Lee* as controlling precedent is improper. For the reasons we have indicated, then, we **AFFIRM** the district court.